PAUL B. RUBENSTEIN & others,[1] trustees,[2] vs. ROYAL
INSURANCE COMPANY OF AMERICA.

Suffolk. March 5, 1999. - April 13, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Contract,* Insurance. *Insurance,* Coverage, Comprehensive liability insurance,
Insurer's obligation to defend. *Damages,* Attorney's fees.

This court concluded that an insured under a comprehensive liability insur-
ance policy was entitled to reasonable attorney's fees and expenses incurred
in successfully establishing the insurer's duty to defend under the policy.
[356-360]

CIVIL ACTION commenced in the Superior Court Department on
March 22, 1990.

The case was tried before *Margot Botsford,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Molly H. Sherden* for the defendant.

*Alan B. Rubenstein (Donald R. Pinto, Jr.,* with him) for the
plaintiffs.

GREANEY, J. The plaintiffs, the trustees of Security Mills Realty
Trust (trust), commenced this declaratory judgment action in
1990 in the Superior Court, seeking a declaration that various
insurance companies, including the defendant, had a duty to
defend and indemnify them in an action brought against them
for damages under G. L. c. 21E, §§ 4 and 5, and G. L. c. 93A,
§ 11, arising out of the environmental contamination of property
formerly owned by the trust in Newton. The trustees claimed
that, during the time the trust owned the property, they had
purchased, and the insurance companies had issued, comprehen-
sive liability policies covering the property. By November,

[1]Bennett B. Rubenstein, John B. Rubenstein, and Lee A. Rubenstein; and
Bennett B. Rubenstein and Lee A. Rubenstein, executors of the estate of
Adele R. Asher.

[2]Of Security Mills Realty Trust.

1994, the trustees had settled the damages action with the new owners of the property, and had resolved their claims against all of the insurance companies except the defendant, which disputed that it had issued any policies to the trustees.

A judge in the Superior Court concluded that the trustees, who had been unable to locate the policies issued to them by the defendant, had sufficiently established the existence and terms of the missing policies, and that one of the defendant's policies gave rise to a duty to defend the trustees in the damages action, and to indemnify them for the settlement paid to the new owner of the property. Although the judge determined that the trustees were entitled to recover defense costs not advanced by one of the other insurers, she denied their motion to recover the attorney's fees they incurred in prosecuting the declaratory judgment action. The judge indicated that the trustees' claim for attorney's fees had "appeal as a matter of logic and also of fairness," but she concluded that recovery of attorney's fees was not permitted under then current Massachusetts law. The trustees appealed and the Appeals Court affirmed the judgment except as to the denial of attorney's fees, which it directed the judge to award based on our decision in *Preferred Mut. Ins. Co.* v. *Gamache*, 426 Mass. 93, 98 (1997) (*Gamache*). *Rubenstein* v. *Royal Ins. Co.*, 44 Mass. App. Ct. 842, 856 (1998). We granted the defendant's application for further appellate review solely to consider whether the trustees are entitled to recover the attorney's fees they incurred in successfully establishing the defendant's duty to defend under its insurance policy.

1. As has been mentioned, in concluding that the trustees could recover their attorney's fees in the declaratory judgment action, the Appeals Court relied on *Gamache, supra*, where we allowed an insured under a homeowner's policy to recover the reasonable attorney's fees and expenses he incurred in successful litigation to establish his insurer's duty to defend. The Appeals Court decided that "[t]here is no plausible reason why a comprehensive liability insurer should enjoy more freedom to litigate that issue without concern about the possibility of having to pay the insured's attorney's fees than in the case of a homeowner's insurer." *Rubenstein* v. *Royal Ins. Co., supra*. We agree.

In *Gamache, supra* at 95, we acknowledged that allowing an insured under a homeowner's policy to recover attorney's fees

and expenses incurred in establishing an insurer's duty to defend was an exception to "[o]ur traditional approach . . . prohibit[ing] recovery of attorney's fees and expenses in a civil case in the absence of either an agreement between the parties, or a statute or rule to the contrary . . . ." Nonetheless, we concluded that such an exception to the so-called "American Rule" was warranted in cases involving disputes between insurers and insureds because to preclude such recovery would "permit[] the insurer to do by indirection that which it could not do directly. That is, the insured has a contract right to have actions against him defended by the insurer, at its expense. If the insurer can force him into a declaratory judgment proceeding and, even though it loses in such action, compel him to bear the expense of such litigation, the insured is actually no better off financially than if he had never had the contract right mentioned above." *Id.* at 96-97, quoting 7C J.A. Appleman, Insurance Law and Practice § 4691, at 283 (rev. ed. 1979).

The defendant argues that the Appeals Court should not have applied our holding in *Gamache* to award attorney's fees to the trustees. The defendant urges us to limit application of the rule to insurers who refuse to defend an insured under a homeowner's policy, and who then lose a declaratory judgment action against the insured on the issue of coverage which the insurer initiated. The defendant also contends that the trustees should not be awarded their attorney's fees because, unlike the insured in *Gamache*, who, because of his insurer's refusal to defend, was required to retain his own counsel for the underlying action, see *id.* at 95, the trustees were advanced their defense costs by other insurers. These attempts to distinguish *Gamache* are not persuasive.

There is no sound reason to differentiate between homeowner's insurance and other kinds of liability insurance in applying the rule in *Gamache*. Numerous courts have awarded attorney's fees to an insured who successfully establishes an insurer's duty to defend under a comprehensive liability policy. See *Bankers & Shippers Ins. Co.* v. *Electro Enters., Inc.*, 287 Md. 641, 643-644 (1980) (insurer had duty to defend insured for claims resulting from airplane crash); *Commercial Union Ins. Co.* v. *Porter Hayden Co.*, 116 Md. App. 605, 655 (1997) (insurer had duty to defend insured installer of insulation containing asbestos in connection with workers' products liability claims); *SCSC Corp.* v. *Allied Mut. Ins. Co.*, 515 N.W.2d 588, 593 (Minn. Ct.

App. 1994), aff'd in part, rev'd in part on other grounds, 536 N.W.2d 305 (Minn. 1995) (insurer had duty to defend insured drycleaning chemical distributor in action arising from groundwater contamination); *Olympic S.S. Co.* v. *Centennial Ins. Co.*, 117 Wash. 2d 37, 40 (1991) (insurer had duty to defend insured warehouseman for claims associated with recall of damaged cans of salmon). Moreover, there is no logical reason to distinguish between insureds who successfully establish their liability insurer's duty to defend under an insurance policy, by hinging recovery on whether the insured or the insurer initiated the coverage action. Nothing we said in *Gamache* suggests a contrary conclusion. An insured is entitled to attorney's fees, regardless of which party instituted the declaratory judgment action, whenever the insured establishes that the insurer violated its duty to defend.

Both legal commentators and courts have observed that a special relationship exists between the insured and the insurer under a liability insurance policy, and have offered the view that many insureds obtain liability insurance to avoid the prospect of being burdened by significant legal expenses. See, e.g., R. Keeton & A. Widiss, Insurance Law § 9.5, at 1056-1057 (1988); 7C J.A. Appleman, Insurance Law and Practice, *supra.* Whether the policy at issue is a homeowner's policy or a comprehensive liability policy, the insured's reason for purchasing the insurance remains the same. In *Brohawn* v. *Transamerica Ins. Co.*, 276 Md. 396, 409-410 (1975), the Maryland Court of Appeals observed that "[t]he promise to defend the insured, as well as the promise to indemnify, is the consideration received by the insured for payment of the policy premiums. Although the type of policy here considered is most often referred to as liability insurance, it is 'litigation insurance' as well, protecting the insured from the expense of defending suits brought against him."

The intent of an insured in acquiring liability insurance is to transfer to the insurer the responsibility for defending the insured against any claim which may fall within the coverage of the policy. The position advanced by the defendant would enable an insurer who wrongfully refused to defend to deprive its insured of the principal benefit of its contractual bargain, and for which the insured paid premiums. Even if the insured were eventually compensated for its defense of the third party action, it would remain permanently uncompensated for the costs as-

sociated with the declaratory judgment action it was forced to initiate because of the insurer's violation of its duty to defend. See *Olympic S.S. Co., Inc.* v. *Centennial Ins. Co.*, *supra* at 53 ("an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract"); *Miller* v. *Fluharty*, 201 W. Va. 685, 694 (1997) ("a policyholder buys an insurance contract for peace of mind and security . . . not to be embroiled in litigation"); *Hayseeds, Inc.* v. *State Farm Fire & Cas.*, 177 W. Va. 323, 329 (1986) ("when an insured purchases a contract of insurance, he buys insurance — not a lot of vexatious, time-consuming, expensive litigation with his insurer").

As the defendant points out, we characterized the insurer's conduct in *Gamache* as an "unjustified refusal to defend under its policy." *Gamache*, *supra* at 95. That the same may not be said of the defendant in this case, where the policies issued by the defendant to the trustees were never retrieved, is of no consequence. Assessment of attorney's fees against the insurer in *Gamache* was not dependent on a finding that the insurer had acted unjustly in refusing coverage. We expressly declined to follow the decisions of those courts which deny recovery of attorney's fees and expenses in actions to establish an insurer's duty to defend unless there is a showing that the insurer has acted in bad faith or has engaged in vexatious litigation. See *id.* at 96, and cases cited. Furthermore, we stated in *Gamache*, *supra* at 98, without the qualification advocated by the defendant, that an insured "is entitled to the reasonable attorney's fees and expenses incurred in successfully establishing the insurer's duty to defend under the policy."[3]

"Whether an insurer's refusal to defend was in good or bad

---

[3]The defendant relies on the Maine Supreme Judicial Court's decision in *Gibson* v. *Farm Family Mut. Ins. Co.*, 673 A.2d 1350, 1355 (Me. 1996), to assert that an insured should only be awarded attorney's fees "when the insurer resists a duty to defend that is clear from the policy and the pleadings filed against the insured." The approach adopted by the Maine Supreme Judicial Court is in essence the "bad faith" standard we declined to adopt in *Preferred Mut. Ins. Co.* v. *Gamache*, 426 Mass. 93, 96 (1997) (*Gamache*). See *Union Mut. Fire Ins. Co.* v. *Topsham*, 441 A.2d 1012, 1019 (Me. 1982) ("When the duty to defend is clear from the policy and the pleadings, so that the insurer's commencement of the declaratory judgment action must be attributed to a refusal in bad faith to honor its obligation under the policy, the insured should be entitled to his reasonable attorneys' fees in defending the declaratory judgment action . . .").

faith is largely irrelevant once it has been established that the insurer breached its contract with its insured." *Aetna Cas. & Sur. Co.* v. *Pitrolo,* 176 W. Va. 190, 194-195 (1986). "The focus of the declaratory judgment inquiry is simply whether the insurer had a duty to defend under the terms of the insurance policy." *Id.* Thus, "it [is] of little importance whether an insurer contests an insured's claim in good or bad faith" for "[t]o impose upon the insured the cost of compelling his insurer to honor its contractual obligation is effectively to deny him the benefit of his bargain." *Hayseeds, Inc.* v. *State Farm Fire & Cas., supra* at 329. "The entitlement of an insured to attorneys' fees and costs incurred in establishing contested coverage depends exclusively on whether that coverage is ultimately determined to exist. It does not depend on whether the denial of coverage by the insurer was reasonable or unreasonable, justified or unjustified, a close question of fact or a matter not even subject to legitimate dispute. The focus is exclusively on the bottom line." *Commercial Union Ins. Co.* v. *Porter Hayden Co., supra* at 713.[4]

Accordingly, the only considerations relevant to our inquiry are that the trustees paid premiums to, and purchased comprehensive general liability insurance from, the defendant covering the Newton property. At least one of the insurance policies covered the claims at issue in the damages action instituted by the new owners of the property. After the damages action was filed, the trustees requested that the defendant assume defense of the action, but the defendant declined. The trustees then commenced a declaratory judgment action, and secured a judgment that the defendant was obligated to provide a defense to the claims. Because the trustees established that the defendant violated its duty to defend them in the damages action, they are entitled to an award of the reasonable attorney's fees and expenses incurred in the declaratory judgment action.[5]

2. The case is remanded to the Superior Court for assessment of the reasonable attorney's fees and expenses incurred by the

[4]An insurer must tread cautiously regarding its duty to defend an insured against third-party actions in view of the expansive interpretation given to that duty. See, e.g., *Simplex Techs., Inc.* v. *Liberty Mut. Ins. Co., ante* 196, 197-199 (1999).

[5]We reject the defendant's argument that the rule in *Gamache* should not be applied retroactively. The trustees had requested an award of attorney's fees in the Superior Court, and *Gamache* was decided the day after the appeal was entered in the Appeals Court.

trustees in prosecuting the declaratory judgment action. In calculating those fees, the defendant should not be charged for the fees and expenses incurred by the trustees in establishing the existence, terms, and conditions of the missing insurance policies issued by the defendant. Although the trustees have not expressly requested attorney's fees on appeal, which is the preferred practice, we think inherent in a claim of this type is an entitlement to appellate attorney's fees. The trustees may apply to a single justice of this court for an award of appropriate attorney's fees and costs in connection with the appeal. See generally *Police Comm'r of Boston* v. *Gows, ante* 14, 20-21 n.6 (1999).

*So ordered.*